LYNN OCCHIPINTI, LLP

Edward G. Williams (EW8737)
90 Broad Street, 10th Fl
New York, New York 10004
Tel.: (212) 239-5500
Email: **egwilliams@lynnocch.com**

*Attorneys for Plaintiff Austin A. Safranek*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
AUSTIN A. SAFRANEK,

                         Plaintiff,

   -against-                                  **COMPLAINT**

HON. CHRISTINE E. WORMUTH, in her official
capacity as Secretary of the Army and LTG
STEVEN W. GILLAND, in his official
capacity as the Superintendent of the United
States Military Academy at West Point,

                       Defendants.
------------------------------------------------------------ x

## INTRODUCTION

1.    This is an action pursuant to the Administrative Procedure Act ("APA") wherein Plaintiff, a former West Point Cadet, seeks judicial review of an adverse decision by the Army Board for Correction of Miliary Records ("ABCMR").

2.    Plaintiff filed an application with the ABCMR to correct his military records to show that he was not separated from the U.S. Military Academy for "misconduct deficiency" as stated on his DD Form 214 and does not owe the Government some $360,000.00 (plus) under an educational expense recoupment requirement.

3.     Plaintiff's application to the ABCMR was grounded on a fundamentally flawed Brigade Board hearing whereat West Point failed to follow its own mandatory regulations to the substantial prejudice of Plaintiff and otherwise failed to provide Plaintiff the due process to which he was entitled.

4.     Upon consideration of Plaintiff's application, the ABCMR should have found that the Brigade Board action was in error and/or unjust pursuant to its mandate in Title 10 U.S.C. Section 1552(a)(1) and granted Plaintiff's application to correct his military records.

5.     The ABCMR, however, denied Plaintiff's application.  In doing so, the ABCMR not only failed to address Plaintiff's arguments in any substantive way, but also failed to satisfy the requirements of _Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co_., 463 U.S. 29 (1983) and its progeny, which requires that an agency must articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made.

6.     The ABCMR's failures to address Plaintiff's claims, and to provide a reasoned explanation for its denial of Plaintiff's application, renders its decision arbitrary and capricious under Section 706(2)(A) of the APA and, accordingly, it's decision must be set aside and vacated, and the matter remanded to the Army for further action consistent with the Court's decision and order.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction with respect to this matter under 28 U.S.C. §1331.  The federal statute upon which jurisdiction rests is the Administrative Procedure Act, 5 U.S.C. § 701 _et seq_., which authorizes this Court to review final decisions of the ABCMR.

8.      Venue lies in this District pursuant to 28 U.S.C. §1391(e)(1)(A) because at least one of the Defendants officially resides in this district, and pursuant to 28 U.S.C. 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## THE PARTIES

9.      Plaintiff Austin A. Safranek has been adversely affected by a decision of the ABCMR which denied his application to correct his military records. Plaintiff resides at 2421 Ryon St., Lincoln, NE 68502.

10.      Hon. Christine E. Wormuth is named as a Defendant in this action in her official capacity as Secretary of the Army. Defendant Wormuth's business address is Office of the Secretary of the Army, 101 Army Pentagon, Washington, DC 20310-0101.

11.      Lt. General Steven W. Gilland. is named as a Defendant in this action in his official capacity as the Superintendent of the United States Military Academy at West Point.  LTG Gilland's business address is Office of the Superintendent, United States Military Academy, West Point, NY 10996-5000.

## STATUTE OF LIMITATIONS

12.      Plaintiff was separated from West Point and honorably discharged from the military with an educational reimbursement requirement on or about June 2, 2016.

13.      Pursuant to 32 C.F.R. Section 581.3(d)(2) and Title 10 U.S.C. section 1552(b), a claimant must file a request with the applicable board for correction of military records within three years of the date of discovering the error or injustice.

14.      Plaintiff filed a timely application to the ABCMR on April 30, 2019, seeking to correct his military records to show that he was not separated for misconduct deficiency and does not owe any money to the Government in the form of an educational expense recoupment requirement.

15.    The ABCMR denied Plaintiff's application on March 28, 2022, just a month short of three years after Plaintiff filed his application with the ABCMR. Title 28 U.S.C. Section 2401(a) requires the filing of a claim for judicial review of an adverse decision by the ABCMR within six (6) years of the date of the adverse decision.

16.    Plaintiff's action herein is timely filed.

## BACKGROUND

### A.  West Point's Cadet Disciplinary System and Disciplinary Boards

17.    The Army has enacted a regulation that "provides the policy and procedures for the general governance and operation of the United States Military Academy," including grounds for separation from the Academy. _See_ Army Regulation 210-26.

18.    Two additional regulations provide more specific guidance with respect to the conduct and discipline of cadets at West Point. They are United States Corps of Cadets ("USCC") Regulation No. 351-1 entitled "_Procedures for Conduct Investigations Under the Cadet Disciplinary System_" and USCC Regulation No. 351-2, entitled "_The Cadet Disciplinary System_."

19.    Disciplinary "Boards" (sometimes called "Hearings") at West Point are non-judicial proceedings conducted by Regular Army officers at various levels of command (e.g., at the Company, Battalion, Regiment and Brigade  levels) and are convened by the commander of the unit to determine whether a Cadet has violated a term (or terms)  - called Articles - of the Cadet Code of Conduct and, if so, what punishment the commander will impose.

20.    These "Boards" are to be convened and conducted in accordance with published procedures which West Point and those in charge of the proceedings are mandated to follow. _See_, e.g., Chapter 1, USCC Regl. 351-2, Section 104e.[1]

---

[1]  A true and correct copy of USCC Regl. 351-2 will be filed separately with the Court.

21.    To comply with due process requirements, West Point's regulations mandate, among other things, that Cadets must be informed of the nature of the alleged offence(s) and rights that cadets have in the proceeding, including their right to "examine all available evidence" prior to and in preparation for the hearing. *Id.,* Section 104e2(b)(2).

22.    Plaintiff was the subject of a "Brigade Board" on February 17, 2016, during his final year at the Academy.

23.    It was the wrongful conduct of this Brigade Board which was at the heart of Plaintiff's application to the ABCMR.

**B.  The Army Board for Correction of Military Records**

24.    Title 10 U.S.C. Section 1552(a)(1) provides that:

> "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.  Except as provided in paragraph (2),[2] such corrections shall be made by the Secretary, acting through boards of civilians of the executive part of that military department."

25.    Under Title 10 U.S.C. §§1034 and 1552, the Secretary of the Army established the Army Board for Correction of Military Records. *See* 32 C.F.R. Section 581.3.

26.    The ABCMR, made up of civilians appointed by the Secretary of the Army, acts on behalf of the Secretary to correct any military record when it "considers it necessary to correct an error or remove an injustice." *See* Title 10 U.S.C.  § 1552(a)(1).

27.    The ABCMR is an "agency" for purposes of the APA, which defines "agency" to include each authority of the Government. *See* Title 5 U.S.C. Section 701(b)(1).

---

[2] Not applicable here.

28.      Decisions by Military Boards for Correction of Military Records constitute final agency action under §704 of the APA and are subject to judicial review *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006).

29.      Judicial review of decisions by the ABCMR are done under the standard of review set forth in Section 706 of the APA.

## STANDARD OF REVIEW

30.      "When a district court reviews a final agency action under the APA, it acts as an appellate tribunal." *Brezler v Mills*, 220 F. Supp. 3d 303, 334, n 20, (E.D.N.Y. 2016), quoting *Hill Dermaceuticals, Inc. v. FDA.*, 709 F.3d 44, 46 n.1 (D.C. Cir. 2013).

31.      The Court's review is limited to consideration of the Administrative Record before the agency at the time it made its decision or took its action. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). Furthermore, "[t]he reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed, and to reach its own conclusions based on such an inquiry." *Id.* at 744.

32.      Under Section 706 of the APA, "[t]he reviewing court shall -- (2) hold unlawful and set aside agency action, findings and conclusions found to be – (A) arbitrary capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege or immunity…" *See* Title 5 U.S.C. Section 706 (2)(A) and (B).

33.      Notwithstanding the court's narrow mandate, the court's review of agency action is to be "plenary, careful, and searching." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *Blassingame v. Secretary of Navy*, 866 F.2d 556, 559 (2d Cir. 1989).

34.    In that regard, a court is duty-bound "to inquire whether an action of a military agency conforms to the law, or is instead arbitrary, capricious, or contrary to the statues and regulations governing that agency," _Brezler v. Mills_, 220 F. Supp. 3d 303, 329 (E.D.N.Y 2016) quoting _Dilley v. Alexander_, 603 F.2d 914, 920 (D.C. Cir. 1979).

35.    In reviewing whether an agency action is arbitrary, capricious under the APA, the court evaluates whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." _Motor Vehicle Mfrs. Ass'n v, State Farm Mut. Auto Ins. Co._ ("State Farm"), 463 U.S. 29, 43 (1983) quoting _Burlington Truck Lines v. United States_, 371 U.S. 156, 168 (1962).

36.    The requirement that agency action not be arbitrary and capricious includes a requirement the agency adequately explain its result. _Henley v. FDA._, 77 F.3d 616, 620 (2d Cir. 1996); _see also_, _Kakar v. United States Citizenship & Immigr. Servs._, 29 F.4th 129, 135  (2d Cir. 2022) (Agency must "articulate a satisfactory explanation for its action."); _National Res. Def. Council v. FAA_, 564 F. 3d 549, 555 (2d Cir. 2009) (Same); _Dickson v. Sec'y of Defense_, 68 F.3d 1396, 1405 (D.C. Cir. 1995) (A Court cannot "uphold the Board's decision" on a particular basis "where it did not address [the] argument in its decision."); _Pub. Citizen, Inc. v. FAA_, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result.")

37.    An agency must provide its reasoning for its decision; "it must not be just a conclusion." _Butte Cty v. Hogen_, 613 F.3d 190, 194 (D.C. Cir. 2010); _NRDC v. United States DOE_, 362 F. Supp. 3d 126, 147 (S.D.N.Y. 2019) ("conclusory statements cannot carry an agency's burden of providing a reasoned explanation for its action," citing _Dickson v. Sec'y of Defense_, 68 F.3d 1396,

1407 (D.C. Cir. 1995) ("[C]onclusory statements … do not meet the requirement that the agency adequately explain its result.")

38.    Subsequent to its decision in *State Farm*, the Supreme Court again noted the "requirement that an agency provide reasoned explanation for its action."  *FCC v. Fox TV Stations, Inc.,* 556 U.S. 502, 516 (2009).

39.    Where an administrative board only lists the facts and states its conclusions, but does not connect them in any rational way, the board's decisions are arbitrary and capricious. *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1407 (D.C. Cir. 1995).

40.    "The arbitrary and capricious standard of the APA 'mandat[es] that an agency take whatever steps it needs to provide an explanation that will enable [a reviewing] court to evaluate the agency's rationale at the time of the decision.'" *Dickson v Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990).

41.    "[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Islander E. Pipeline Co., LLC v. Conn. Dep't of Envtl. Prot.*, 482 F.3d 79, 95 (2d Cir. 2006), quoting *State Farm*, 463 U.S. 29 at 50.

42.    If the agency does not provide a reasoned analysis, the court "may not itself supply a reasoned basis for the agency action that the agency itself has not given" *Kakar v. United States Citizenship & Immigration Servs.*, 29 F.4th 129, 132 (2d Cir. 2022) quoting *State Farm*, 463 U.S. 29 at 43; *see also Brodsky v. United States NRC*, 704 F.3d 113, 119 (2d Cir. 2013); *Pub. Citizen, Inc. v. Mineta*, 340 F.3d 39, 53 (2d Cir. 2003).

43.    A court "must be certain that an agency has considered all the important aspects of the issue and articulated a satisfactory explanation for its action." *Kakar v. United States Citizenship*

*& Immigration Servs.*, 29 F.4th 129, 135 (2d Cir. 2022) quoting *Henley v. FDA*, 77 F. 3d 616, 620 (2d Cir. 1996), *see also*, *NorAm Gas Transmission Co. v. FERC*, 148 F.3d 1158, 1165 (D.C. Cir. 1998) ("It most emphatically remains the duty of [federal courts] to ensure that an agency engage the arguments raised before it [and] that [the agency] conduct a process of *reasoned* decision-making.") (Emphasis in original).

44.    An agency action is deemed "arbitrary and capricious" under Section 706(2)(A) of the APA if the agency "entirely failed to consider an important aspect of the problem,…" *State Farm*, 463 U.S. 29 at 43; An agency is required "to address [all] arguments that are not facially frivolous." *Frizelle v. Slater*, 111 F.3d 172, 174 (D.C. Cir. 1997).

45.    "A military correction board's decision-making process [is] arbitrary and in violation of the APA if the board did not consider or respond to arguments made by the plaintiff that do not appear 'frivolous on their face and could affect the Board's ultimate decision.'" *Thalasinos v. Harvey*, 479 F. Supp. 2d 45, 50 (D.D.C. 2007), quoting *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)

46.    "If [an agency] decides not to address [plaintiff's] arguments, it must explain why." *Id.*

47.    Remand is appropriate when the agency has failed to "consider all relevant factors." *Brodsky v. U.S. NRC*, 704 F.3d 113, 119 (2d Cir. 2013).

48.    "When a government agency is found to have violated the APA, the proper remedy is for the Court to vacate the agency action and remand the matter back to the agency for such further action, as appropriate." *Harmon v. Brucker*, 355 U.S. 579, 583 (1958); *see also Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *Hill Dermaceuticals, Inc. .v. FDA*, 709 F. 3d 44, 46 n.1 (D.C. Cir. 2013); *Dickson v. Sec'y of Defense*, 68 F.3d 1396 (D.C. Cir. 1995) (agency action was arbitrary and capricious and therefore vacated under the APA because the military Board

failed to provide any adequate explanation for its conclusions); _NRDC v. United States DOE_, 362 F. Supp. 3d 126 (S.D.N.Y. 2019) (failure to provide reasoned explanation required remand); _Brezler v. Mills_, 220  F. Supp. 3d 303 (E.D.N.Y. 2016) (military Board decision vacated and remanded because Board failed to follow its own regulations); _Lefrancois v. Mabus_, 910 F. Supp. 2d 12 (D.C. 2012) (Military Board decisions vacated and remanded because of failure adequately to consider plaintiff's claims);  _Pettiford  v. Sec'y of the Navy_, 774 F. Supp. 2d 173 (D.D.C. 2011) (Navy Military Board's failure to address plaintiff's argument renders its decision arbitrary, requiring remand.); _Gastall v. Resor_, 334 F. Supp. 271, 273 (D. Mass. 1971 ) (vacating miliary discharge due to regulatory violation in failing to provide qualified legal counsel to assist Plaintiff).

## STATEMENT OF FACTS

### A.  Plaintiff's Enrollment and Suspended Separation in 2014

49.     Plaintiff enrolled at West Point on June 27, 2011, and majored in French. _See_ Plaintiff's Memorandum to the ABCMR dated April 30, 2019, at page 1.[3]

50.    In the Spring of 2014, Plaintiff participated in a study abroad program in Williams, France, while residing with a local host family. _Id._

51.    Due to a misunderstanding with Plaintiff's host family based on an incident involving alcohol and the language barrier, Plaintiff was asked to find another host family. Pltf Mem pg. 2.

52.    Plaintiff was ordered to return to the Academy rather than continue with his studies abroad with a new host family; and a Misconduct Investigation ensued upon his return. Pltf Mem pg. 2.

53.     At the conclusion of the investigation, the Superintendent of West Point imposed various penalties including a one-year "turn back" and placed Plaintiff on "Suspended Separation"

---

[3] Hereinafter "Pltf Mem at pg.  _" (with page number inserted).

status, which was to remain in place until his graduation in 2016. ("Probationary Period"). Pltf Mem pg. 2.

54.    One of the conditions of Plaintiff's July 2014, suspended separation status was that he was not to receive an individual award of 35 demerits or more as result of an Article 10 Brigade Board for an act that occurred during the Probationary Period. Pltf Mem pg. 2.

**B.  Plaintiff Soldiered on in Good Standing**

55.     Plaintiff worked very hard to learn from his mistakes and to become a better cadet.  He successfully completed West Point's Special Leadership Development Program and was recommended to fill leadership positions within his Company.  Pltf Mem pg. 2.

56.    In April 2015, Plaintiff interviewed for the Company Commander position with his Company Tactical Officer and in July was notified of his selection, a role he filled beginning in August 2015.  Pltf Mem pg. 2.

**C.  Events leading up to the February 17, 2016 Brigade Board**

57.    On September 22, 2015, Plaintiff spent the day attending a biannual leadership conference with other cadets who were serving in leadership positions. *See* Pltf Mem pg. 3.

58.    He attended the conference banquet, followed by a whisky-tasting event organized by his Company Social Committee.  Pltf Mem pg. 3.

59.    This whisky-tasting event was a formally organized and sanctioned event attended by Plaintiff's chain of command, including his regular army Company Commander and Tactical NCO.  Pltf Mem pp. 3, 9.

60.    Plaintiff consumed very small samples of whisky (about one ounce each) along with water and additional food. Pltf Mem pg. 3.

61.    Plaintiff's regular army Company Commander and TAC NCO were both in attendance and were near Plaintiff throughout the entire event and neither mentioned anything at that (or any subsequent) time about his behavior or that he was impaired or intoxicated. Pltf Mem pp. 3, 5, 9.

62.    Following this event, Plaintiff returned to his barracks to do homework, and prepare for the next day. Pltf. Mem pg. 3.   He also made a number of phone calls home, including a lengthy call with his uncle to discuss his branch assignment decision.  *Id.*

63.    Then, in his capacity as Cadet Company Commander, Plaintiff decided he would ensure that the first-year cadets ("Plebes") under his command had properly prepared their new "as-for-class" uniform which they would be wearing for the first time the next day. Pltf Mem pg. 3.

64.    Plaintiff's interaction with cadets varied depending on the circumstance. Pltf Mem pg. 3. For example, if lights were out, he did not wake the cadets. *Id.*

65.    Plaintiff walked into several rooms and talked with the Plebes.  Pltf Mem pg. 3.  As he was leaving one room after counseling three male cadets on how to prepare their unforms for the next day, Plaintiff gave one of the roommates a "good job" slap on the backside as many teammates do and which Plaintiff had similarly seen countless times before at West Point. Pltf Mem pp. 3-4.

66.    Unknown to Plaintiff until later, this first-year Cadet reported to Plaintiff's chain of command that Plaintiff's action made him uncomfortable, and that he believed Plaintiff's action was inappropriate. Pltf Mem pg. 5.

### D.    Plaintiff Relieved of His Command; a CID Investigation Ensued and was Dropped

67.    The following evening, Plaintiff was called into the office of the Tactical NCO, read a counseling statement, relieved of his command as Cadet Company Commander and assigned to another Company and barracks. Pltf Mem pg. 4. He was not given the reason for his demotion and moved to another cadet company. *Id.*

68.    Plaintiff had little to no knowledge of how the system worked or how to engage with the system to his best advantage. Pltf Mem pg, 4.   Accordingly, he turned to the USMA Trial Defense Service attorney on September 30, 2015, for advice. *Id.*

69.    The attorney was nonchalant and unhelpful. Pltf Mem pg. 7. He took no action on Plaintiff's behalf and offered no assistance or advice but implied that Plaintiff should just be patient and let events play themselves out. Pltf Mem pp. 4, 12.

70.    Plaintiff later learned that on October 2, 2015 (some 10 days after the September 22 incident) the matter was referred to the West Point Criminal Investigation Division office ("CID") to determine whether Plaintiff's interaction with the first-year cadet constituted a sexual assault. Pltf Mem pp. 3-4.

71.    Plaintiff was interviewed by an agent of the CID in December 2015.  He was never provided the report of his interview to read to see if it accurately reflected what he said [4]  Pltf Mem pg.5.

72.    Subsequently, Plaintiff was verbally informed that a decision had been made to drop the criminal investigation and any related charges and that a court martial was not warranted, but that he would be made the subject of an Article 10 Brigade Board.  Pltf Mem pp. 5-6.

### E.  Failure to Give Plaintiff Adequate Notice of Charges and of his Rights

73.    On February 11, 2016, Plaintiff was orally advised by his new Company TAC Officer of the date for the pending Article 10 Brigade Board. However, Plaintiff was not informed of the specific charges; nor was he informed of the nature of the evidence against him or the names of witnesses against him. Pltf Mem pp. 6, 10.

---

[4] Plaintiff never admitted to the CID agent that he was intoxicated as stated in the report by the agent.  (Pltf Mem pg.9.

74.    Significantly, Plaintiff was not provided a copy of what is called a "Form 2-3" which is used to advise a Cadet of his rights, the charges being brought against him, and the possible penalties if found guilty.[5] Pltf Mem pp. 6, 9-10. [6]

### F.    The February 17, 2016, Brigade Board Hearing

75.    Plaintiff reported, as instructed, to attend the Brigade Hearing the morning of February 17, 2016. Pltf Mem pg. 6.

76.    Plaintiff was briefly questioned by the Brigade Tactical Officer, Col. Steven Merkel,[7] for approximately two minutes and then asked to leave the room.[8] Pltf Mem pg. 6.

77.    Plaintiff was not present when any witnesses were questioned; nor was he given the right or opportunity to rebut anything that was said, during the approximately one hour after he left the Hearing room. Pltf Mem pg. 6.

78.    After Plaintiff was told to return to the hearing room, Col. Merkel told Plaintiff that he had found him guilty. Pltf Mem pg. 6.

79.    It was only at this time, after the Hearing was over, that Plaintiff was shown the Form 2-3 and told to sign it, which he did.  Pltf Mem Pg. 6 (*See* Attachment "2" to Plaintiff's application to the ABCMR).

---

[5] The first time Plaintiff was provided the Form 2-3 was at the February 17, 2016, Brigade Board, and only *after* the Hearing had concluded. Pltf Mem pp. 6, 9; See Attachment "2" to Plaintiff's April 30,2019 memorandum to the ABCMR.

[6] The ABCMR's restatement is very much at odds with of what Plaintiff wrote in his application to the ABCMR occurred on February 11, 2016.  Pltf Mem pp. 6,9.

[7] There were a number of individuals in the hearing room, in addition to Col. Merkel.  Plaintiff is unaware of who, in addition to Col Merkel, if any, constituted members of "the Board" or who were present to testify as witnesses, or in some other capacity.  One individual present was  Mr. Delroy Patrick, the Regulations & Discipline Officer at West Point who, in effect, serves as prosecutor of the charges. Pltf Mem pg. 6.

[8]  The Hearing was "off the record," meaning that there was no stenographic record or tape recording made of the proceedings.

80.    The Form 2-3 did not list any demerits as part of the punishment. *Id.*

### G.  Events Subsequent to the Brigade Board Hearing

81.    Plaintiff was later advised that he received 35 demerits as a result of the Brigade Board. Pltf Mem pg. 7.

82.    Plaintiff was further advised that this award of 35 demerits would automatically lift his suspended separation imposed in July 2014, and that the Superintendent would recommend to the Assistant Secretary that he be separated from West Point. *Id.*

### H.  The Superintendent's Recommendation to the Department of the Army

83.    By memorandum dated April 13, 2016, the Superintendent of West Point recommended to the Assistant Secretary that Plaintiff be separated from the United States Military Academy, transferred to the U.S. Army Reserves in the grade of E-4 for three years, and ordered to active duty for three years. Pltf Mem pg. 7.

### I.  Plaintiff's April 13, 2016, FOIA Request

84.    Plaintiff filed a FOIA Request dated April 13, 2016, asking West Point to provide (among other things): "all documents pertaining to the … brigade board which occurred February 17, 2016, and any documents, memoranda or coversheets that were presented to superintendent at the time he made the decision to separate CDT Safranek on April 13, 2016. Pltf Mem pp. 7-8.

### J.  The Assistant Secretary of the Army Rejects West Point's Recommendation and Decides to Discharge Plaintiff with an Educational Recoupment Requirement

85.    By memorandum dated June 2, 2016, the Assistant Secretary rejected the Superintendent's recommendation that Plaintiff be retained for continued military service and, without explanation, "determined" Plaintiff was "unsuited for military service" and ordered

Plaintiff discharged from the military with a monetary educational recoupment requirement. Pltf. Mem pg.7. (*See* attachment "4" to Plaintiff's application to the ABCMR).

86.    A copy of Plaintiff's Certificate of Discharge (DD Form 214) dated June 8, 2016 which shows that Plaintiff's discharge was for "Misconduct Deficiency" is annexed to Plaintiff's application to the ABCMR as Attachment "9".

### K.  West Point's Response to Plaintiff's FOIA Request

87.    Under cover of letter dated June 10, 2016, Plaintiff received a response to his April 13, 2016 FOIA Request requesting records pertaining to the Brigade Board Hearing and the Superintendent's decision to separate Plaintiff.   Pltf Mem pp. 7-8.

88.    Among the records provided to Plaintiff were 16 pages related to the CID investigation, including a redacted Agent's investigation report, a redacted sworn statement from an unknown witness, and a series of redacted "canvas interview" worksheets.  Pltf Mem pp 7-8. (*See* attachment "1" to Plaintiff's application to the ABCMR).

89.    The FOIA Response also contained one page stating that five (5) pages were withheld from production. *Id.*[9]

### PLAINTIFF'S APPLICATION TO THE ABCMR[10]

90.    On April 30, 2019, Plaintiff filed his application for correction of military records with the ABCMR.

91.    In the memorandum Plaintiff submitted as part of his application, Plaintiff alleged that West Point:

---

[9] Plaintiff respectfully requests that the Government provide a "privilege log"  with respect to the withheld documents so that the Plaintiff can test the legitimacy of the basis of the claimed exemptions from disclosure of these withheld documents   The Government has thus far simply set forth  broad-brushed boiler plate reasons, with no specificity as to the identity of the author, recipient(s), date and general subject matter of each of the withheld pages.

[10] A true and correct copy of Plaintiff's application to the ABCMR will be filed separately with the Court

a) did not provide him, in advance of the Hearing, with the Form 2-3 setting forth the charges against him or otherwise provide him with adequate notice of the charges or the penalties facing him if found guilty; Pltf Mem pp. 6, 10;

b) did not advise Plaintiff of his right to examine all relevant evidence in connection with, and in preparation for, the Hearing; Pltf Mem pp. 6,10;

c) did not permit Plaintiff the opportunity to examine the CID documents in the possession of, and used by, the Brigade Tactical Officer as evidence at the Hearing. Pltf Mem pp. 10,12:

d) denied Plaintiff his Fifth Amendment right to due process. Pltf Mem pp.1; 6, 10, 12;

e)  denied Plaintiff his Sixth Amendment right to effective counsel. Pltf Mem pp. 1,4,7,12.

92.    Plaintiff requested to personally appear before the ABCMR. (_See_ Cover sheet to application to the ABCMR).

### THE ABCMR'S DECISION[11]

93.    The ABCMR's decision[12] denying Plaintiff's application, transmitted under cover of a letter dated March 28, 2022, consists of the following:

a) 12 pages wherein the ABCMR purports to restate Plaintiff's April 30, 2019 memorandum to the ABCMR in support of his application[13];

b)  purports to summarize the contents of the attachments to Plaintiff's application;

---

[11] A true and correct copy of the ABCMR's decision will be filed separately with the Court

[12]  The ABCMR's letter transmitting its decision to Plaintiff is dated March 28, 2022; but the "Board Date" of the ABCMR decision is February 19, 2021.

[13] To the extent the ABCMR's purported restatement of Plaintiff's memorandum to the ABCMR differs from Plaintiff's own narrative, the facts in Plaintiff's narrative must control, and not the ABCMR's purported restatement.

c) three paragraphs headed "Discussion" followed by a one sentence "Board

Determination/Recommendation"; and concludes with

d) four pages headed "References" setting forth various regulations and references to

statutes with no explanation of why they were included or how they relate to the

matter.

94.    The ABCMR's "Discussion" reads in its entirely as follows:

**"1.  After careful review of the application and all supporting documents, the Board found relief is not warranted. The Board further found that the available evidence is sufficient to fully and fairly consider this case without a personal appearance by the applicant."**

**"2. The Board found insufficient evidence to support a conclusion that the applicant's Constitutional rights were substantially harmed during the proceedings that led to his separation from the USMA for misconduct deficiency. Based on a preponderance of the evidence, the Board determined that the decision to separate him and the reason for his separation were not in error, unjust or inequitable.**"

**"3. Although the Superintendent. USMA. recommended the applicant be transferred to the U.S. Army Reserve as an enlisted member and ordered to active duty for 3 years in lieu of repaying the funds expended for his education, the ASA M&RA determined he was unsuited for military service. The Board agreed that the ASA M&RA was not obligated to approve the Superintendent's recommendation, and she acted within her authority in determining that the applicant was unsuited for military service, would be separated from USMA, and would repay the U.S. Government for the cost of his USMA education. The Board further agreed that the available evidence supports the conclusion made by ASA M&RA. Based on the preponderance of evidence, the Board determined the decision that the applicant should repay the education assistance expended on his behalf was not in error, unjust, or inequitable."**

95.    The ABCMR concludes with its "Board Determination/Recommendation":

**"The evidence presented does not demonstrate the existence of a probable error or injustice.  Therefore, the Board determined the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned."**

96.     The ABCMR decision did not specifically address or analyze any of Plaintiff's claims. (*See* First Claim below).

97.     The ABCMR also failed to follow the dictates of *State Farm* and its progeny which requires that an agency "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the decision made," *State Farm*, 463 U.S. 29 at 43. (*See* Second Claim below).

## FIRST CLAIM
### (Violation of APA, 5 U.S.C. Section 706)

**The ABCMR Failed to Address Key Issues Raised by Plaintiff in its Decision Thereby Mandating that its Decision Be Set Aside and the Matter Remanded Back to the Army**

98.     The preceding paragraphs of this Complaint are each incorporated by reference, as if fully set forth herein.

99.     It is settled law that an agency action is deemed "arbitrary and capricious" under Section 706(2)(A) of the APA if the agency "entirely failed to consider an important aspect of the problem…." *State Farm*, 463 U.S. 29 at 43.

100.   If an agency decides not to address [an] argument, "it must explain why." *Thalasinos v. Harvey*, 479 F. Supp. 2d 45, 50 (D.D.C. 2007).

101.   The ABCMR failed entirely to address the following issues raised by Plaintiff in his application.

### A.  **The ABCMR failed to Address Plaintiff's Claim of Inadequate Notice**

102.    Plaintiff asserted in his application that West Point failed to provide him adequate notice of the charges he would be facing at the Brigade Board and that such failure denied him the due process to which he was entitled.

103.    The denial of Plaintiff's due process rights on account of the failure of West Point to provide Plaintiff with the Form 2-3 and/or otherwise provide Plaintiff notice of the charges and penalties if found guilty prior to the Hearing rendered the proceeding "unjust" with the meaning of that term as used in Title 10 U.S.C. Section 1552(a)(1).[14]

104.    The ABCMR entirely failed and neglected to address this issue in its decision.

### B. The ABCMR Failed to Address Plaintiff's Claim Relative to West Point's Failure to Advise Plaintiff of his Right "To Examine All Relevant Evidence"

105.    Plaintiff asserted in his application that West Point's failed to advise him of his right to "review all relevant evidence" and then permit him to review such evidence.

106.    By regulation, West Point was required to advise Plaintiff of his right to "examine all relevant evidence" (*See* Chapter One, USCC Regulation 351-2, section 104e.2.(b)(2)).

107.    West Point did not comply with this regulation relative to the CID reports; and its failure to do so worked to the substantial prejudice of Plaintiff.

108.    The failure of West Point to comply with USCC Reg 351-2, section 104e in connection with the Brigade Board rendered the decision of the Brigade Board arbitrary and capricious within the meaning of Section 706(2)(A) of the APA[15]

109.    It is axiomatic that an agency ruling/action that is arbitrary and capricious within the meaning of Section 706(2) (A) of the APA is "unjust" as that term is used in Title 10 U.S.C. Section 1552(a)(1).

110.    The ABCMR entirely failed and neglected to address this issue in its decision.

---

[14] The term "unjust" is not defined in the statute.  However, the term "unjust "is defined In *Black's Law Dictionary* as "Contrary to right and justice, or to the enjoyment of his rights for another, or to the standards of conduct furnished by the laws."

[15] *Brezler v. Mills,* 220 F. Supp. 3d 303 (E.D.N.Y. 2016); see *Calloway v. Brownlee*, 366  F. Supp. 2d 43, 53 (D.D.C. 2005) ("an agency action is arbitrary and capricious if the agency failed to follow procedures as required by law.")

**C.  The ABCMR Failed to Address the Issue of the Brigade Board's Use of Documents  Plaintiff Had Not Been Provided and of Which He Was Not Aware.**

111.    Plaintiff asserted in his application that the Brigade Board's use of the CID records of which Plaintiff was unaware at the Brigade Board Hearing denied him a fair hearing.[16]

112.   On account of the foregoing, the Brigade Board Hearing was "unjust" as that term is used in Title 10 U.S.C. Section 1552(a)(1).

113.   The ABCMR entirely  failed and neglected to address this issue in its decision.

**D.  The ABCMR Failed to Address Plaintiff's Fifth and Sixth Amendment Claims**

114.    Plaintiff asserted in his application to the ABCMR claims of denial of his Fifth and Sixth Amendment rights.

115.    No citation to law is needed to know that the denial of Plaintiff's Fifth and/or Sixth Amendment rights would render the Brigade Board's Hearing and decision "unjust" as that term is  used in Title 10 U.S.C. Section 1552(a)(1).

116.    The ABCMR, entirely failed and neglected to explain its denial of  Plaintiff's Fifth and Sixth Amendment claims in its decision in any substantive way.

117.   The failure and neglect of the ABCMR to address each of Plaintiff s aforesaid claims in any substantive way, or explain why it did not do so, mandates that its decision be set aside and remanded back to the Army.

---

[16] _Gonzales v. United States,_ 348 U.S. 407 (1955) (Failure to provide Petitioner reports relied on by Board violated "underlying concepts of procedural regularity and basic fair play."); _U.S .v. Balogh,_ 157 F.2d 939, 943 (2d Cir. 1947) (Learned Hand)( The use by the Board of evidence of which the petitioner was unaware and which he had no chance to answer made the Hearing unfair)( vacated on other grounds, 329 U.S. 692); _Crotty v. Kelly,_ 443 F.2d  214 (1st Cir 1971) (Failure of the Hearing Board to afford petitioner access and a chance to respond to all reports was a denial of due process).

## SECOND CLAIM
### (Violation of APA, 5 U.S.C. Section 706)
### The ABCMR Failed to Provide an Explanation for its Determination Thereby Mandating that Its Decision Be Set Aside and the Matter Remanded Back to the Army

118.    The preceding paragraphs of this Complaint are each incorporated by reference, as if fully set forth herein.

119.    The ABCMR failed to satisfy the requirements of *Motor Vehicle Mftrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) and its progeny that an agency must "articulate a satisfactory explanation for its action reveal[ing] a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. 29 at 43.

120.    Notwithstanding conflicting evidence before it, the ABCMR did not find or identify any "facts" it relied on in making its determination.

121.    The ABCMR decision does not contain any factual or legal analysis explaining how it reached its decision denying Plaintiff's claims.

122.    All the ABCMR did was set forth its conclusions but did not explain in any substantive way how it reached its determination.

123.    The ABCMR's conclusory statements are insufficient to allow for meaningful judicial review.

124.    The ABCMR's conclusory statements do not meet the requirement that an agency provide a reasoned analysis connecting the facts found with the decision made.

125.    In accordance with *State Farm* and other settled law set forth in paragraphs 30-48 *supra*, the ABCMR's failure to address Plaintiff's claims, other than with a conclusory statement of denial, mandates that its decision be set aside and vacated, and the matter remanded back to the Army.

## <u>PRAYER FOR RELIEF</u>

*WHEREFORE,* by reason of the foregoing, Plaintiff respectfully requests that the Court grant him the following relief:

1. Enter judgement in favor of Plaintiff with respect to each of his claims;

2. Declare unlawful and set aside the decision of the ABCMR;

3. Remand the matter back to the Army with instructions to consider and issue a reasoned and substantive determination with respect to each of Plaintiff's claims within ninety (90) days of the Court's decision and order;

4. Upon proper application, award Plaintiff his reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. Section 2412(d) and as otherwise may be allowed by law;

5. Assign all costs associated with this action to Defendants; and

6. Grant Plaintiff such other and further relief as the Court may deem just and proper.


Dated: New York, New York
   July 12, 2023

         Respectfully submitted,

         LYNN OCCHIPINTI, LLP

     By:  */s/ Edward G. Williams*
         Edward G. Williams (EW8737)
         90 Broad Street, 10th Fl.
         New York, NY 10004
         Tel.: (212) 239-5500
         egwilliams@lynnocch.com

         Attorneys for Plaintiff